## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 19-23569-Civ-SCOLA/TORRES

ISAAC LOPEZ,

        Plaintiff,

v.

ANDREW SAUL,
Commissioner of Social
Security Administration,

        Defendant.

_____/

## REPORT AND RECOMMENDATION ON THE PARTIES'
## CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the parties' cross motions for summary judgment filed by Isaac Lopez ("Plaintiff") [D.E. 25] and Andrew Saul, Acting Commissioner of Social Security Administration ("Defendant" or the "Government") [D.E. 30] on whether the Administrative Law Judge (the "ALJ") properly weighed the evidence presented in reaching an unfavorable decision.[1]   Under the limited standard of review that governs this case, the Court finds that substantial evidence supports the ALJ's decision.   Therefore, Plaintiff's motion for summary judgment [D.E. 25] should be **DENIED**, Defendant's motion for summary judgment [D.E. 30] should be **GRANTED**, and the ALJ's decision should be **AFFIRMED**.

_____

[1]   On August 25, 2019, the Honorable Robert N. Scola referred the parties' cross-motions to the undersigned Magistrate Judge for disposition.   [D.E. 2].

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was born on September 14, 1972 and was 41 years old on the onset of his alleged disability.   After finishing high school, Plaintiff completed some college-level coursework and worked as a security guard.   On May 8, 2014, Plaintiff filed an application for Social Security benefits because he was unable to work due to epilepsy, heart problems, sinus conditions, diabetes, and high blood pressure.   The Social Security Agency denied Plaintiff's application at the initial and reconsideration levels.   Plaintiff then requested a hearing before an ALJ that took place on January 25, 2017.[2]

The ALJ issued a decision on May 1, 2017, denying Plaintiff's application. Plaintiff filed a request for review with the Appeals Council and that was granted on January 5, 2018.   A second hearing then took place before the same ALJ on February 6, 2019.   The ALJ issued another decision on February 27, 2019 and the ALJ denied Plaintiff's application for a second time.

The ALJ found at step one of the sequential process that, even though Plaintiff had worked after the date of his alleged disability, those earnings had not risen to the level of substantial gainful activity.   At step two, the ALJ determined that Plaintiff had the severe impairments of post-traumatic epilepsy/seizure disorder, depressive disorder, bipolar disorder, anxiety disorder, and mild neurocognitive disorder.   The ALJ found, however, at step three that Plaintiff did

---

[2]      The ALJ in both cases was Ena Weathers.

not have an impairment that met or medically equaled a listed impairment.   As part of this analysis, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform:

> [L]ight work as defined in 20 CFR 416.967(b) except the claimant is unable to climb ladders, ropes or scaffolds; occasional climbing of ramps and stairs; must avoid even moderate exposure to hazards, including moving machinery, commercial driving and work at unprotected heights; must avoid concentrated exposure to vibration, fumes, odors and pollutants; tasks without strict production pace; and occasional to superficial interaction with the general public.

[D.E. 15 at 60].

Proceeding to step four, the ALJ found that Plaintiff could not perform his past relevant work.   However, after considering Plaintiff's age, education, work experience, and RFC, the ALJ determined at step five that there were jobs that Plaintiff could perform in the national economy.   *Id.* at 71-72.   The ALJ therefore concluded at step five of the sequential process that Plaintiff was not disabled.

Following the ALJ's unfavorable decision, Plaintiff requested further review, but the Appeals Council denied that request.   Plaintiff then filed this action seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. § 405(g). Accordingly, this action is now ripe for disposition.

## II.     STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to an inquiry into whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied.   *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kelley v. Apfel*, 185 F.3d 1211, 1212

(11th Cir. 1999). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)).

In testing for substantial evidence, the court is not to "reweigh the evidence" or "decide the facts anew." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citing another case). Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and we must defer to the ALJ's decision even if the evidence may preponderate against it. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings."); *Miles*, 84 F.3d at 1400; 42 U.S.C. § 405(g). However, no presumption of validity attaches to the Commissioner's conclusions of law. *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). The Court also reviews the ALJ's decision to determine whether the correct legal standards were applied. *See Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). In this respect, "the ALJ has a basic obligation to develop a full and fair record," as a hearing before an ALJ is not an adversary proceeding. *Id.* (citing another source).

Ultimately, it is the function of the Commissioner to resolve conflicts in the evidence and to assess the credibility of the witnesses. *See Grant v. Richardson*,

445 F.2d 656 (5th Cir. 1971).   It is also the responsibility of the Commissioner to draw inferences from the evidence, and those inferences cannot be overturned if they are supported by substantial evidence.   *See Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963).   In determining whether the Commissioner's decision is supported by substantial evidence, a court is not to re-weigh the evidence anew.   Rather, a court is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. If a decision is supported by substantial evidence, we must affirm even if the proof preponderates against it.   Therefore, a court's responsibility is to ensure that the proper legal standards were applied.   *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

### III.      ANALYSIS

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).   The claimant bears the burden of producing evidence that proves he or she meets this statutory definition.   "The social security regulations establish a five-step evaluation process, which is used to determine disability for both SSI and DIB claims" and "[t]hese regulations place[] a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work."   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Spencer v.*

5

*Heckler,* 765 F.2d 1090, 1093 (11th Cir. 1985)).   The steps are followed in order to determine if the claimant is disabled.   "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (internal quotation and citation omitted).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made and the inquiry ends.   *See* 20 C.F.R. § 404.1520(b).   In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments.   If the ALJ does not make such a finding, then the inquiry ends.   *See* 20 C.F.R. § 404.1520(c).   At step three, the ALJ compares the claimant's impairments with specific impairments under the regulations that require a finding of disability without further inquiry into the claimant's ability to perform other work.   *See Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985) ("Certain impairments are so severe either when considered alone or in conjunction with other impairments that, if such impairments are proved, the regulations require a finding of disability without further inquiry into the claimant's ability to work.").   If the claimant's impairment meets or equals a listed impairment, the claimant's disability is presumed, and benefits are awarded. *See* 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing past relevant work.   If the claimant cannot perform past relevant work, then a prima facie case of disability is established.   The ALJ

assesses a claimant's RFC at this stage, based on all of the other relevant evidence, to determine the extent of a claimant's ability to work despite the alleged impairments. *See* 20 C.F.R. § 416.945(a)(1). A claimant's RFC is an administrative finding of fact concerning the claimant's maximum remaining capacity to perform work-related physical and mental activities on a regular and continuing basis despite the functional limitations and environmental restrictions imposed by his or her medically determinable impairment(s). *See* 20 C.F.R. § 404.1545 ("Residual functional capacity assessment. Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations.").

When making this finding, the ALJ is required to identify the limitations and/or restrictions imposed by the claimant's impairments and then assess his or her work-related abilities on a function-by-function basis. Only upon the conclusion of this function-by-function analysis may an ALJ express a claimant's RFC in terms of the exertional levels of work, i.e., sedentary, light, medium, heavy, and very heavy. This leads to step five – the final inquiry – where the burden shifts to the Commissioner to show that there is other work available in the national economy that the claimant can perform. *See* 20 C.F.R. § 404.1520(e)-(f).

On appeal, Plaintiff challenges the ALJ's decision in three respects: (1) that the ALJ's evaluation of the medical evidence is erroneous, (2) that the ALJ's RFC finding lacks substantial evidence, and (3) that the rationale used to reject Plaintiff's

allegations is inconsistent with the Social Security regulations. We will consider each argument in turn.

### A.    *Whether Substantial Evidence Supports the Weight Assigned to the Medical Opinions*

The first issue is whether substantial evidence supports the weight assigned to the medical opinions. An ALJ evaluates several factors when determining how much weight to assign a medical opinion, including: (1) whether the physician has examined the claimant, (2) the length, nature, and extent of a treating physician's relationship with the claimant, (3) the medical evidence and explanation supporting the physician's opinion, (4) how consistent the physician's "opinion is with the record as a whole," and (5) the physician's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). These factors apply to both examining and non-examining doctors. *See id.* Absent good cause, the ALJ must give a treating physician's[3] opinion substantial or considerable weight. *See id.* (noting that more weight is generally given to opinions from treating sources); *see also Winschel*, 631 F.3d at 1179.

Good cause exists when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241. "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.* Furthermore, the ALJ

---

[3]    A treating source is defined as the claimant's "own physician . . . who provides [the claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502.

must state with particularity the weight given to different medical opinions and the reasons therefore. *See Winschel*, 631 F.3d at 1179 (reiterating that without a statement from the ALJ, a reviewing court would be unable to determine whether the disability decision was rational and supported by substantial evidence). The opinion of a one-time examiner is not entitled to deference or special consideration. *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 878 (11th Cir. 2013) ("[T]he ALJ was not required to defer to Dr. Vrochopoulos's opinion since he was a psychologist who only examined Denomme on a single occasion and did not treat her.") (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)).

The opinion of a non-examining physician is entitled to little weight when it contradicts the opinion of an examining physician. *See Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir. 1988). However, "[w]here a non-examining physician's report includes information that is not contained in the examining physicians' reports, but does not contradict the examining physicians' reports, the ALJ does not err in relying on the non-examining physician's report to the extent it contains non-contradictory information." *Kemp v. Astrue*, 308 F. App'x 423, 427 (11th Cir. 2009) (citing *Edwards v. Sullivan,* 937 F.2d 580, 584–85 (11th Cir. 1991)). The weight to be given a non-examining physician's opinion depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence. *See* 20 C.F.R. § 404.1527(d)(3)–(4); *see also Crawford,* 363 F.3d at 1160 (holding that the ALJ did not err in relying on consulting physician's opinion where it was consistent with medical evidence and findings of the examining

physician).   The more consistent a physician's opinion is with the record as a whole, the more weight an ALJ will place on that opinion.   *See* 20 C.F.R. § 404.1527(d)(4).

Procedurally, an ALJ is "required to state with particularity the weight he [gives] the different medical opinions and the reasons therefor." *Sharfarz v. Bowen,* 825 F.2d 278, 279 (11th Cir. 1987).   Absent such a statement, a reviewing court cannot determine whether the ultimate decision is supported by substantial evidence.   *See Hudson v. Heckler,* 755 F.2d 781, 786 (11th Cir. 1985) (citation omitted).   However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision" enables the court "to conclude that the ALJ considered [the claimant's] medical condition as a whole." *See Dyer*, 395 F.3d at 1211.   This means that if an ALJ makes clear that he or she considered a physician's opinion, and that the findings were consistent with the opinion, then there is no harmful error.   *Colon v. Colvin*, 600 F. App'x 867, 870 (11th Cir. 2016).   In other words, "even if the ALJ erroneously failed to explicitly assign weight to and discuss every aspect of [a doctor's] opinion, this error [is] harmless because it is still clear that the ALJ's rejection of the portions of [the doctor's] opinion that are inconsistent with the ALJ's ultimate conclusion was based on substantive evidence."   *Newberry v. Comm'r, Soc. Sec. Admin.*, 572 F. App'x 671, 672 (11th Cir. 2014).   With these principles in mind, we turn to the arguments presented.

1.    _Dr. Ginart_

The first medical professional that Plaintiff challenges is Dr. Herbert Ginart ("Dr. Ginart").   Dr. Ginart opined that there was a "presence of considerable cognitive difficulties being caused by a combination of mild neurological impairment, psychiatric factors, and the sedation caused by [Plaintiff's] medications, particularly the ones he takes to treat his epileptic seizures[.]"   [Tr. at 720].   He also stated "that both neurological and psychiatric factors are to blame for the patient's cognitive difficulties," that two brain injuries "cause[d] permanent cognitive and intellectual deficits," and that two other areas of poor performance were common with bipolar disorder.   _Id_. at 721.   Plaintiff reasons that these findings are inconsistent with the ALJ's RFC and that the ALJ's failure to consider these opinions requires that this case be remanded.

In a similar vein, Plaintiff argues that the ALJ committed reversible error when she assigned Dr. Ginart's opinions on form N-648 "little weight".[4]   Dr. Ginart opined that Plaintiff was unable to read, write, speak, or answer questions in English because of his mental impairments.   The ALJ assigned these findings little weight because they were partially inconsistent with the fact that Plaintiff lived and worked in the United States for several years and Plaintiff had no need for a translator at a prior hearing.   Plaintiff claims that the ALJ's reasons are misplaced because the mere fact that someone has lived in the United States should not imply

_____

[4]    The findings on this form relate specifically to Plaintiff's ability to learn English and civics.

11

that a person has learned English.

Plaintiff's arguments lack merit because the ALJ gave an abundance of reasons for why Dr. Ginart's opinions should be assigned to little weight.   First, the ALJ called into question Dr. Ginart's opinions because the record showed that Plaintiff was more proficient in the English language than he initially described. Plaintiff has lived and worked in the United States for several years, and he attended college in Cuba.   The ALJ also noted that Plaintiff sometimes answered questions presented in English before an interpreter had an opportunity to translate, suggesting that Plaintiff's deficiencies were not as accurate as he alleged. Second, the ALJ found that Dr. Ginart's opinions were unreliable because the record presented contradictory evidence.   Plaintiff told Dr. Ginart, for example, that he was homeless, sad, and single when the record showed that Plaintiff was living with his parents and that he had a girlfriend.   Third, the ALJ explained that Dr. Ginart was not a treating physician (and therefore not entitled to deference), did not have the opportunity to review the longitudinal record, was unfamiliar with the Social Security Agency's disability program, and that his opinions were inconsistent with Plaintiff's ability to engage in gainful work activity.

Plaintiff takes issue with the ALJ's reasons for variety of reasons, but none of them cast doubt that substantial evidence supports the ALJ's decision.   Plaintiff claims, for instance, that living in the United States does not equate to learning English, that earning minimal employment is not indicative of him being able to work, and that being homeless or having a girlfriend does not mean that he was

12

forever barred from acquiring housing or a relationship at a later date.   While these arguments might be viable at an administrative hearing, they fail at this stage because the question is not whether some evidence supports a finding of disability. The question is whether substantial evidence supports the ALJ's decision.   And given that standard and the reasons already stated, there is more than a scintilla of evidence to support the weight assigned to Dr. Ginart.   For these reasons, substantial evidence supports the weight that the ALJ assigned to the medical opinions of Dr. Ginart.[5]

    *2.*   *Dr. Troiano*

Plaintiff's second argument is that the ALJ erred in assigning significant weight to the September 2014 opinion of non-examining physician Dr. Debra Troiano ("Dr. Troiano").[6]  Dr. Troiano opined that Plaintiff could perform light level work with limitations in climbing and exposures to vibration, respiratory irritants, and work hazards.   Plaintiff complains that the ALJ erred in placing significant weight on Dr. Troiano because she never examined Plaintiff nor was she a

---

[5]    Plaintiff mentions in his reply that the ALJ failed to specifically reference Dr. Ginart's neuropsychological testing report.   But, the ALJ gave many reasons to discredit all of Dr. Ginart's opinions for the reasons already stated.   While the ALJ did not reference a specific report, there is nothing to suggest that the ALJ omitted any part of the record.   Instead, the ALJ gave reasons that applied to all of Dr. Ginart's opinions including inconsistencies in his reports, his status as a non-treatment provider, his failure to consider the longitudinal record, and his lack of familiarity with the agency's disability program.

[6]    The ALJ gave lesser weight to Dr. Troiano's opinion related to noise exposure because there was no evidence of ongoing treatment that warranted this limitation. [Tr. at 69].

neurologist.[7]   Plaintiff also states that Dr. Troiano rendered an opinion based on an incomplete record and that many of the reasons the ALJ used to discredit other medical providers should have applied with equal force to Dr. Troiano.   Plaintiff reasons that substantial evidence is therefore lacking for Dr. Troiano because her opinions are incomplete and the ALJ failed to include an adequate rationale for adopting her opinions while rejecting other physicians.

Plaintiff's arguments miss the mark because, although Dr. Troiano was not a neurologist or a treating physician, the ALJ placed significant weight on her opinions because they were consistent with other evidence in the record (including evidence provided after she rendered her opinions).   The ALJ also stated that Dr. Troiano was familiar with the agency's disability program, that she thoroughly explained her opinions in her reports, and that she supported her opinions with references to the medical record.   Plaintiff focuses, on the other hand, about how Dr. Troiano was neither a neurologist nor Plaintiff's treating physician, and that the

---

[7]   According to Social Security Ruling 96–6p, the findings of state agency medical and psychological consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ level of administrative review.   Although ALJs are not bound by the findings of state agency doctors, "they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96–6p.   Numerous courts have recognized this duty to address the opinions of state agency doctors.   *See Wade v. Colvin,* 2013 WL 3153846, at *4 (M.D. Fla. June 19, 2013) (remanding to Commissioner, in part, because of failure to explain rejection of part of opinion offered by state agency consultant); *Plourde v. Barnhart,* 2003 WL 22466176, at *4 (D.Me. Oct. 31, 2003) (relying on SSR 96–6p to conclude that "[w]ithout discussion or explanation, the administrative law judge implicitly rejected all of the foregoing mental limitations (by state agency doctors).

ALJ was wrong to discredit some medical providers for reasons that should have also applied to Dr. Troiano.   The problem with Plaintiff's contention is that the ALJ gave many other reasons for assigning Dr. Troiano's opinions significant weight.   That is, while the ALJ might have been partially inconsistent in differentiating Dr. Troiano from the other physicians record, that does not undermine the many other reasons provided for placing significant weight on Dr. Troiano's opinions.   Thus, we cannot conclude that the ALJ's decision lacks substantial evidence as to Dr. Troiano.

   *3.    Dr. Torre and Dr. Carrasco*

   Plaintiff's third argument is that the ALJ erred in assigning little weight to the opinions of Dr. Angel Carrasco ("Dr. Carrasco") and Dr. Agustin Torre ("Dr. Torre") when they opined that Plaintiff's epilepsy met Listing 11.02.[8]   Plaintiff claims that it is unclear why these opinions were discredited when Dr. Carrasco had extensive knowledge of Plaintiff's condition as his treating neurologist.   Plaintiff also states that – although the ALJ rejected these opinions because they were unsupported and inconsistent with other clinical findings – the ALJ failed to specify what evidence she specifically relied upon.   Plaintiff asserts that the record contains copious evidence supporting their opinions and that neither are

---

[8]    "To 'meet' a Listing, a claimant must have included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement."   *Wilson v. Barnhart,* 284 F.3d 1219, 1224 (11th Cir. 2002).   To "equal" a Listing, the medical findings must be "at least equal in severity and duration" to the listed findings.   *See* 20 C.F.R. § 404.1526(a). Where a claimant has alleged several impairments, the ALJ is required to consider the impairments in combination and to determine whether the combined impairments are medically equivalent to a listed impairment.   *See Jones v. Dept. of Health and Human Services,* 941 F.2d 1529, 1533 (11th Cir. 1991).

15

inconsistent with Plaintiff's allegations related to his seizures.   As such, Plaintiff disagrees with the way that ALJ weighed the opinions of Dr. Carrasco and Dr. Torre because the reasons provided do not go hand in hand with the evidence in the record.

Plaintiff's arguments are unavailing because the opinions of Dr. Carrasco and Dr. Torre were not only unsupported with other evidence in the record but they were also inconsistent with their own clinical findings.   Dr. Torre's treatment notes indicated, for example, that Plaintiff had normal psychiatric and neurological exams.   Dr. Torre's opinion was also inconsistent with the normal EEG reports and Plaintiff's self-reported descriptions of his daily life.   The ALJ then added additional reasons for discrediting Dr. Torres in that (1) he failed to have the opportunity to review the longitudinal record that showed inconsistent reports of symptoms and functioning, (2) he did not have any expertise with the agency's disability program (including the requirements of the listing), and (3) he failed to provide a medical explanation for his opinions.   Given all these reasons, it is hard to fathom how the ALJ's decision lacks substantial evidence.

Turning to Dr. Carrasco, the ALJ provided the same reasons in explaining why his opinion deserved little weight.   While the ALJ gave some weight to Dr. Carrasco's opinions that Plaintiff should avoid hazards and airplanes – as they were consistent with the diagnosis of a seizure disorder and the ALJ accounted for these limitations in the RFC assessment – the ALJ gave little weight to Dr. Carrasco's other opinions because of several inconsistencies.   These inconsistencies included

Plaintiff's living arrangements and his normal clinical results.   The record also showed, that Plaintiff's seizures were not disabling, that Dr. Carrasco lacked expertise with the agency's disability program, and that he too failed to provide a medical explanation for his opinions.   In short, the ALJ gave several adequate reasons for assigning little weight to the opinions of Dr. Torres and Dr. Carassco and – while Plaintiff may disagree with the conclusion reached – substantial evidence supports the ALJ's decision with respect to these two medical professionals.

       *4.*    <u>*Dr. Borrego*</u>

Next, Plaintiff challenges the ALJ's decision to assign little weight to the opinions of treating psychiatrist Dr. Priscilla Borrego ("Dr. Borrego").   Plaintiff visited Dr. Borrego in October 2015 and the latter found that Plaintiff was unable to work because he had marked impairments in social and occupational functioning. [Tr. at 66].   The ALJ determined, however, that most of Dr. Borrego's findings were based on Plaintiff's self-reported symptoms as opposed to any objective determinations.   Plaintiff argues that this is incorrect and that Dr. Borrego always distinguished between Plaintiff's subjective complaints and the medical findings on Plaintiff's mental status examinations.   Indeed, Plaintiff states that Dr. Borrego consistently noted how Plaintiff suffered from significant clinical abnormalities, including depressed and anxious mood, impaired memory, impaired eye contact, impaired concentration, paranoid delusions, racing thoughts, and possible hallucinations.

Plaintiff also claims that the ALJ erred when she found that Plaintiff had unremarkable psychiatric findings while he was incarcerated.   Plaintiff suggests that this is unsupported in the record because, while incarcerated, there is evidence that he was confused, disoriented, anxious, depressed, frustrated, and that he exhibited unintelligible speech.   Plaintiff then argues that the ALJ's errors were compounded when the ALJ stated that she could not confirm that Plaintiff was taking all of his medications.   Plaintiff takes issue with the ALJ's reasoning because the inability to confirm the consumption of medications is not the same as medical noncompliance.   That is, Plaintiff states that there is no evidence that he was noncompliant and that this should not have been a reason for discrediting Dr. Borrego.

Although Plaintiff raises a host of other arguments related to how the ALJ evaluated the opinions of Dr. Borrego, we need no go any further because it is clear that none are persuasive.   It is certainly true that Plaintiff's records with Dr. Borrego documented some abnormalities (i.e. depression, anxiety, and hallucinations).   But, Plaintiff's exams were otherwise normal and Plaintiff demonstrated many characteristics of an individual who was not as disabled as he appeared.   These characteristics included an appropriate appearance, full orientation, intact thought processes, fair concentration, and eye contact.   [Tr. at 66].

Dr. Borrego's opinions were also mismatched with the evidence in the record because Plaintiff received limited, conservative treatment for his mental health

18

impairments, consisting of medication management only once a month.  *See Peters v. Astrue*, 232 F. App'x 866, 871 (11th Cir. 2007) (affirming ALJ's decision to discredit treating source opinion where the ALJ had observed that treating physicians "followed 'conservative' courses of treatment and had noted that [claimant] had responded well to physical therapy and to anti-inflammatory injections").  In addition, Plaintiff did not attend any individual or group therapy for his complaints of depression or anxiety.  And Dr. Borrego never reported any difficulty in interacting with Plaintiff, suggesting that his opinions were based more on Plaintiff's self-reported symptoms rather than objective findings.  The same inconsistencies continued in 2018 and 2019 when Dr. Borrego reported some severe findings of psychosis and paranoia but Plaintiff's exams demonstrated full orientation, intact thought processes, fair concentration, fair reliability, and fair eye contact.

Plaintiff's issue with how the ALJ evaluated Dr. Borrego has more to do with the conclusion the ALJ reached than whether substantial evidence supports the ALJ's decision.  Plaintiff goes on and on, for example, about how the ALJ should not have placed great emphasis on Plaintiff's medications or the symptoms he exhibited at his appointments.  But, Plaintiff's arguments are misguided because the issue is not whether the evidence could have supported a different result.  The issue is whether substantial evidence supports the decision that the ALJ actually reached.  And given the abundance of reasons that the ALJ included in her opinion – many of which the Court omitted for the sake of not being redundant – there is no

evidence that the ALJ erred in her consideration of Dr. Borrego.   While Plaintiff can, of course, disagree with the ALJ's reasoning, evaluation, and weighing of the evidence, he has not presented any argument that casts doubt on whether substantial evidence supports the conclusion reached.   Therefore, the weight assigned to Dr. Borrego is supported with substantial evidence.

      5.      *Dr. Gonzalez-Diaz*

      The ensuing argument is directed at the ALJ's decision to give little weight to the opinions of Dr. Vivian Gonzalez-Diaz ("Dr. Gonzalez-Diaz").   Dr. Gonzalez-Diaz performed a consultative psychological evaluation of Plaintiff on August 6, 2014. Plaintiff stated to Dr. Gonzalez-Diaz that he was depressed and that he could not work because of seizures. Plaintiff also reported that he spent time watching television, listening to music, texting with his girlfriend, managing his own money, making store purchases, and walking to various places.   Dr. Gonzalez-Diaz then assessed Plaintiff with major depressive disorder, but ruled out mood disorder, cognitive disorder, and amnestic disorder.

      Plaintiff complains that the ALJ's decision lacks substantial evidence because the ALJ was inconsistent in how she weighed the medical evidence.   Plaintiff claims that the ALJ discredited Dr. Gonzalez-Diaz because the latter did not have the opportunity to review the longitudinal record to form a comprehensive opinion. But, Plaintiff alleges that the ALJ relied on Dr. Troiano even though he made the same error.   Because the ALJ was inconsistent in how she approached two different medical opinions, Plaintiff maintains the ALJ's decision cannot stand.

Plaintiff's argument is feeble because – even if the ALJ was inconsistent in discrediting Dr. Gonzalez-Diaz for her failure to review the longitudinal record – the ALJ gave many other adequate reasons for the weight assigned.   Plaintiff avoids any discussion of these other reasons, but the ALJ explained that Dr. Gonzalez-Diaz's opinions deserved little weight because the acute findings on her own mental status exam did not support the opinions she rendered.   The ALJ then suggests that Dr. Gonzalez-Diaz delivered her opinion very early during the relevant period and that she did not have the opportunity to review some of the inconsistencies that Plaintiff provided elsewhere throughout the record.

In addition, Dr. Gonzalez-Diaz's opinions consisted of ruling out certain medical disorders and the ALJ noted that these did not rise to the level of a medically determinable impairment.   It is also worth noting that Dr. Gonzalez-Diaz was only a one-time medical examiner and that her opinions were not entitled to any deference as opposed to a treating physician.   *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1260 (11th Cir. 2019) ("[A]n ALJ is justified in discounting a physician's opinion when the doctor has seen the claimant only once; for the purposes of our caselaw, 'one-time examiners' are not properly considered 'treating physicians.'") (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004)). Therefore, substantial evidence supports the ALJ's decision to assign Dr. Gonzalez-Diaz's opinions little weight.

21

6.    _Dr. Sierra_

Plaintiff's final argument, as to the medical evidence, concerns family medicine provider Dr. Vanessa Sierra ("Dr. Sierra").   Dr. Sierra completed a form in December 2018 and opined that Plaintiff had fairly significant limitations.   She found, for example, that Plaintiff should be limited to light work and could only sit, stand, or walk for one hour in a workday.   Dr. Sierra also determined that Plaintiff could only handle occasional reach, handle, finger, feel and foot controls, and only occasional ramps/stairs.

Plaintiff takes issue with how the ALJ weighed Dr. Sierra's opinion because, although she was not a neurologist, the ALJ acted inconsistently when weighing her opinion with other medical professionals in the record.   Plaintiff notes, for instance, that the ALJ relied, in part, on Dr. Troiano's opinions even though he was not a neurologist.   Plaintiff suggests that the ALJ should have done the same for Dr. Sierra and that the inconsistent approaches with respect to two different medical providers renders this portion of the decision lacking in substantial evidence.

Plaintiff's argument is not compelling because – even if we assume that the ALJ should not have discredited Dr. Sierra for failing to be a neurologist – the ALJ gave many other adequate reasons for assigning Dr. Sierra's opinions little weight. The ALJ stated, for example, that there was no objective medical evidence of any condition that would limit Plaintiff's abilities to sit, stand, or walk for more than an hour a day, and that Dr. Sierra's opinions were extreme when compared with the remaining evidence in the record.

Even worse, Dr. Sierra's opinions were conclusory because she used a generic check-off form. "[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions."[9] *Hammersley v. Astrue*, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) (citing *Spencer*, 765 F.2d at 1094 (rejecting opinion from a non-examining physician who merely checked boxes on a form without providing any explanation for his conclusions)); *see also Mason v. Shalala,* 994 F.2d 1058, 1065 (3rd Cir. 1993) (noting that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). While these forms are admissible, "they are [generally] entitled to little weight and do not constitute 'substantial evidence' on the record as a whole." *O'Leary v. Schweiker,* 710 F.2d 1334, 1341 (8th Cir. 1983); *Teague v. Astrue,* 638 F.3d 611, 616 (8th Cir. 2011) ("Given that the 'check-off form' did not cite any clinical test results or findings and Dr. Lowder's previous treatment notes did not report any significant limitations due to back pain, the ALJ found that the [form] was entitled to "little

---

[9]     The Eleventh Circuit determined in *Schink* that the use of a check box format "is not a basis, in and of itself, [to] discount them as conclusory." *Schink*, 935 F.3d at 1262.    *Schink* is of less relevance in this case because we do not rely solely on the use of a check-off form in finding that the ALJ had good cause to assign Dr. Sierra's opinions little weight.    We also rely on the absence of any other evidence in the record to support her findings.    And even to the extent *Schink* is inconsistent with the Eleventh Circuit's earlier decision in *Spencer*, the prior decision in *Spencer* should control.   *See Swann v. S. Health Partners, Inc.,* 388 F.3d 834, 837 (11th Cir. 2004) ("Under the prior panel rule, we are bound by the holdings of earlier panels unless and until they are clearly overruled en banc or by the Supreme Court.").

evidentiary weight."); *Mason*, 994 F.2d at 1065 (noting that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best").

Therefore, to the extent there was an inconsistency as to some of the reasons the ALJ discredited Dr. Sierra, substantial evidence supports the weight assigned because her opinions had no support when compared with the entire medical record. *McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006) ("The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion.") (internal citation omitted).[10]

### B.    *Whether Substantial Evidence Supports the RFC Assessment*

Plaintiff's second argument is that the ALJ erred in assessing his RFC because he rejected the opinions of every psychological and psychiatric medical provider.   Plaintiff alleges that the ALJ took it upon herself to find that Plaintiff was limited to "tasks without strict production pace," and "occasional to superficial interaction with the general public" based solely on her lay assessment of the evidence in the record.   [Tr. at 60].   Plaintiff suggests that this is improper because an ALJ cannot supersede the role of a medical expert nor can she draw a conclusion

---

[10]    We also note that there are no records showing that Dr. Sierra had a treating relationship with Plaintiff, meaning her opinion is not entitled to deference. *See, e.g.*, *Ziglar v. Berryhill*, 2019 WL 2387047, at *7 (M.D. Ala. June 4, 2019) ("As a non-treating physician who examined Ziglar only twice, his opinion is not entitled any special deference."); *see also Wilcox v. Comm'r, Soc. Sec.*, 442 F. App'x 438, 439 (noting that the "the opinions of examining or treating physicians are given more weight than non-examining or non-treating physicians").

for which she is ill equipped to do.   Thus, Plaintiff concludes that the ALJ "played the role of doctor" and that her decision lacks substantial evidence because she supplanted the role of several medical professionals.   *See Hernandez v. Barnhart*, 203 F. Supp. 2d 1341, 1355 (S.D. Fla. 2002) (finding "that the ALJ may have improperly 'played the role of medical expert, interpreted the raw psychological and medical data, and drew her own conclusions as to the claimant's RFC.'") (quoting *Marbury v. Sullivan,* 957 F.2d 837, 840–41 (11th Cir. 1992) (Johnson, J. concurring) (stating the ALJ cannot act as both a judge and a physician)); *see also Manso–Pizarro v. Secretary,* 76 F.3d 15, 17–19 (1st Cir. 1996) (noting that an ALJ, as lay person, is not qualified to interpret raw data in a medical record); *Rohrberg v. Apfel,* 26 F. Supp. 2d 303, 311 (D. Mass. 1998) (stating that when the medical findings merely diagnose the claimant's impairments and do not relate the impairments to specific residual functional capabilities such as those set out in 20 C.F.R. § 404,1567(a), the Commissioner may not make that connection himself).

An RFC is an assessment of a claimant's ability to do work despite his impairments.   *See Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997).   An ALJ makes an RFC finding based on all the "relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3).   The ALJ must consider any statements by medical sources about what the claimant can still do and whether those statements are based on formal medical examinations.   The ALJ must also consider descriptions and observations of the limitations resulting from a claimant's impairments,

including limitations that result from symptoms, such as pain.[11]  *Id.*  Only "acceptable medical sources" can provide medical opinions, which are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of" a claimant's impairment, including symptoms, diagnosis and prognosis, what the claimant can still do despite the impairment, and the claimant's physical or mental restrictions.  *Id.* § 404.1527(a)(2).   Ultimately, an ALJ may not make medical findings herself, *see Marbury v. Sullivan*, 957 F.2d 837, 840 (11th Cir. 1992), but it is her responsibility to resolve conflicting medical opinions.  *See Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984).

Here, there is no evidence that the ALJ usurped the role of a doctor because she merely weighed the medial opinions in light of the other evidence in the record. While Plaintiff may disagree with how the ALJ weighed those opinions, substantial evidence supports the weight that she gave to each medical professional for the reasons already stated.   The ALJ also did not, for example, interpret raw medical evidence, diagnose Plaintiff, make medical findings, or in any way act like a medical provider.   To salvage his argument, Plaintiff alleges that the ALJ failed to explain why she imposed an RFC limitation on interacting with the public but not coworkers or supervisors.   The problem with this contention is that, while the ALJ

---

[11]    The term "medical sources" refers to both "acceptable medical sources" and other health care providers who are not "acceptable medical sources."  20 C.F.R. § 404.1502.   "Acceptable medical source" includes treating sources, nontreating sources, and nonexamining sources.  *Id.*

gave Plaintiff the benefit of the doubt as to his social limitations, it was ultimately Plaintiff's burden to prove that he had additional limitations.   And Plaintiff failed to do so.

Substantial evidence further supports the ALJ's decision as to Plaintiff's social limitations because, although Plaintiff stated that he did not enjoy being around other people, he denied that he had problems with authority figures – making it appropriate to limit Plaintiff to the general public but not coworkers or authority figures.   [Tr. at 424].   Plaintiff has therefore failed to support his argument with anything in the record to suggest that the ALJ was "playing doctor" in determining Plaintiff's RFC and, as a result, Plaintiff's second argument is another swing and a miss.

### C.   _Whether Substantial Evidence Supports the Rejection of Plaintiff's Complaints_

Plaintiff's final argument is that the ALJ failed to properly evaluate his symptoms and allegations of pain.   The Social Security regulations provide that statements about pain or other symptoms will not alone establish that a claimant is disabled.   _See_ 20 C.F.R. § 404.1529(a).   "In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."   _Wilson_, 284 F.3d at 1225 (citation omitted).   An ALJ

is not required to accept a claimant's subjective allegations of pain/symptoms and may properly consider the credibility of a claimant when making a determination of disability. *See id.* at 1225-26. If an ALJ rejects a claimant's allegations of pain, "he must articulate explicit and adequate reasons for doing so." *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995).

A "clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* at 1562. If a disability is based on subjective evidence and a credibility determination is made against the claimant, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983). The ALJ is not required to cite "particular phrases or formulations but it cannot merely be a broad rejection" that prevents a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *See Foote*, 67 F.3d at 1561; *Jamison v. Bowen*, 814 F.2d 585, 590 (11th Cir. 1987) ("Broad findings that a claimant lacked credibility and could return to her past work alone are not enough to enable us to conclude that the ALJ considered her medical condition as a whole.").

In reaching a determination, the ALJ may consider the following factors: (1) treatment history, (2) the type, dosage, effectiveness, and side effects of any medications taken, (3) treatment taken other than medications, (4) any other measures used for relief of pain or other symptoms, (5) any precipitating and aggravating factors, (6) medical source opinions, (7) statements by the claimant or

others about pain and other symptoms, (8) information about prior work, and (9) evidence of daily activities. *See* 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3). But, the ALJ is not required to discuss every aforementioned factor. *See Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) ("In sum, the ALJ considered Dyer's activities of daily living, the frequency of his symptoms, and the types and dosages of his medications, and concluded that Dyer's subjective complaints were inconsistent with his testimony and the medical record. The ALJ thus adequately explained his reasons").

Plaintiff complains that the ALJ engaged in an improper credibility assessment because – although the ALJ determined that Plaintiff's allegations were inconsistent with the evidence in the record – his findings were inconsistent with SSR 16-3p. As background, SSR 16-3p rescinded a previous social security ruling that concerned the credibility of a claimant. *See* SSR 16-3p, 82 Fed. Reg. 49,462, 49,463 (Oct. 25, 2017). SSR 16-3p removed the use of the term "credibility" from its sub-regulatory policy because the Social Security's regulations did not use that term. *Id*. SSR 16-3p clarified that "subjective symptom evaluation is not an examination of an individual's character" and that a two-step evaluation process must be used. *Id*.

Step one is to determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *Id*. at 49,463–64. Step two is an evaluation of the intensity and persistence of an individual's symptoms, such as pain, to determine the extent to

which an individual's symptoms limit her ability to perform work-related activities. *Id.* at 49,464–66. The Commission has stated that adjudicators must consider all of the evidence in an individual's record when making a determination as to an individual's symptoms:

> Consistent with our regulations, we instruct adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult . . . with a title XVI disability claim.

*Id.* at 49463.

Contrary to SSR 16-3p, Plaintiff accuses the ALJ of violating this regulation because the inconsistencies that the ALJ relied upon are mistaken for several reasons. Plaintiff takes issue, for instance, with the ALJ's decision to focus on his ability to complete 100 hours of community service. Plaintiff asserts that community service was required via a court order and that it was not indicative of his ability to perform any work activities. Plaintiff also states that the ALJ discredited him because of statements related to his family life (i.e. whether Plaintiff was single, married, and had children) but failed to consider whether any of the inconsistencies were due to translation issues, scrivener's errors, or simply changes in Plaintiff's relationship status. The same is true when the ALJ focused on the frequency in which Plaintiff showered because, while Plaintiff stated that he could bathe himself in 2014, there was no evidence that he did so in later years.

30

Plaintiff further states that the ALJ was mistaken when she found that Plaintiff was noncompliant with taking his medications because that occurred on the date that his disability began.  And there is no evidence of noncompliance thereafter.  Making matters worse, Plaintiff suggests that the ALJ was entirely incorrect when relying on the absence of any reported seizures because Plaintiff suffered from multiple seizures that several individuals witnessed throughout his period of disability.  All in all, Plaintiff reasons that the inconsistencies that the ALJ identified lack substantial evidence and that the ALJ erred because she assessed his "credibility" as opposed to the consistency of his complaints with the evidence in the record.

Plaintiff's arguments are unpersuasive, in large part, because the ALJ properly considered the required factors in assessing Plaintiff's subjective complaints and found them inconsistent with the evidence in the record.  Plaintiff takes issue with the ALJ's reasons for finding his subjective complaints to be unsupported but Plaintiff fails to set forth a viable argument in support of his position.  Take, for instance, Plaintiff's complaint that the ALJ considered his ability to perform court-ordered volunteer work during a period that Plaintiff alleges that he was disabled.  While Plaintiff states that the ALJ erred, the Social Security regulations give an ALJ broad discretion to consider whether a claimant's disabling limitations go hand in hand with his or her allegations.  *See, e.g., Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 877 (11th Cir. 2012) ("Smith frequently volunteered at Habitat for Humanity."); *Kinsey v. Colvin*, 2015 WL 12851242, at *7 (M.D. Fla. Sept.

31

3, 2015) ("[T]he plaintiff's activities of volunteering at a food shelter twice weekly, attending church regularly, and going fishing with a friend, were inconsistent with disabling limitations.").

Plaintiff also complains that the ALJ found him not credible because of his noncompliance in taking his medications.   But, the ALJ did no such thing.   The ALJ merely stated that, when Plaintiff visited a hospital for a reported seizure, he admitted that he sometimes failed to take his own medications.   The ALJ then noted that Plaintiff's complaints were inconsistent with his daily activities because he was able to drive himself, prepare his own meals, perform household chores, go shopping, manage his personal finances, watch television, and manage his personal grooming.   [Tr. at 69-70].   This suggested that Plaintiff's seizures were better controlled than previously alleged.   This does not even include the other instances in the record where the ALJ found that Plaintiff's self-reported symptoms were inconsistent with doctors and other medical providers.   That is, while Plaintiff complains that the ALJ failed to consider his symptoms in comparison with the evidence in the record, the ALJ's decision undermines that argument at every turn. The ALJ gave specific reasons for discounting Plaintiff's allegations and supported that evaluation with copious references to the record.

Accordingly, each of Plaintiff's arguments lacks merit and substantial evidence fully supports the ALJ's credibility determinations.   *See Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 540 (11th Cir. 2016) ("Credibility determinations are the province of the ALJ, and will not be overturned unless not

supported by substantial evidence.") (citing *Moore*, 405 F.3d at 1212).   Plaintiff's motion for summary judgment [D.E. 25] should therefore be **DENIED**, Defendant's motion for summary judgment [D.E. 30] should be **GRANTED**, and the ALJ's decision should be **AFFIRMED**.

## IV.   CONCLUSION

Substantial evidence supports the ALJ's findings as noted in her unfavorable decision.   The ALJ applied proper legal standards and any errors therein did not prejudice Plaintiff and were harmless.   For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment [D.E. 25] be **DENIED**, that Defendant's motion for summary judgment [D.E. 30] be **GRANTED**, and that ALJ's decision be **AFFIRMED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.   Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.   28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 6th day of

August, 2020.


/s/ Edwin G. Torres
EDWIN G. TORRES
United States Magistrate Judge